In the matter of the Application of HAWAIIAN ELECTRIC COMPANY, INC. for Approval of Rate Increases and Revised Rate Schedules

NO. 9764

(DOCKET NO. 4536)

MARCH 13, 1985

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY TANAKA, J.

Hawaiian Electric Company, Inc. (HECO) appeals the Public Utilities Commission's (PUC) decision and order which approved

less than half of the rate increases sought by HECO. The sole issue on appeal is procedural: whether the PUC must give notice to a utility that an expense item previously accepted in setting rates is now questioned, so that the utility may present evidence on its behalf. The answer, on state due process grounds, is yes, and so we reverse.

I.

On July 6, 1982, HECO filed an application for rate increases with the PUC. Three volumes of HECO's written testimony and exhibits accompanied the application. Later, HECO voluntarily submitted three volumes of workpapers supporting the application and exhibits. In response to specific requests of the Consumer Advocate (CA)[1] and the Department of Defense and other federal executive agencies (DOD),[2] HECO filed additional information and documents. The PUC, which had authority to request prehearing information, asked two questions, both of which received written responses from HECO.

After the evidentiary hearings, HECO, the CA, and DOD submitted briefs. On September 16, 1983, the PUC issued its decision and order in which it disallowed, *inter alia,* HECO's proposed depreciation adjustment on the ground of insufficient evidence. The PUC had not questioned this adjustment either before or during the hearing. Aside from nine pages of calculations, HECO did not present any evidence on the matter, as the CA had agreed with HECO on both the adjustment and the amount.

On September 26, 1983, alleging eleven errors in the decision and order, including the disallowance of the depreciation allowance, HECO moved for reconsideration or rehearing. In support of the motion, HECO submitted, as offer of proof, over 500

---

[1] The Consumer Advocate (CA) represents the consumer and participates as a party in Public Utilities Commission (PUC) hearings. *See* HRS § 269-51 (Supp. 1984). The CA was required by the Hawaii Supreme Court to file a position brief in this case, and sides with HECO on this appeal.

[2] The Department of Defense and other federal agencies were permitted to intervene in the case by the PUC, and they did but are not parties in this appeal.

pages of data regarding the depreciation adjustment which were available had the PUC or any party raised any question concerning it.

Except as to one item (the expensing of engineering costs) which was reconsidered and corrected, the PUC denied HECO's motion. HECO then filed its timely appeal.[3]

## II.

HECO claims that the PUC violated HECO's due process right[4] to notice. Thus, we review the PUC's decision under HRS § 91-14(g)(3) (1976), which requires reversal if the decision is based on unlawful procedure.

## III.

### A.

Initially, HECO stresses the fact that the CA's computation of the depreciation adjustment was identical to that of HECO's and that the DOD made no request regarding this issue. But agreement between the parties in a rate case cannot bind the PUC, as the PUC has an independent obligation to set fair and just rates and arrive at its own conclusions. *See In re Hawaii Electric Light Co., Inc.,* 67 Haw. 425, 690 P.2d 274 (1984) (hereinafter *In re HELCO*).

---

[3] The appeal included not only the disallowance of depreciation adjustment issue but also the issues involving (1) the pension expense calculation and (2) the inclusion of undrawn proceeds of special purpose revenue bonds in the rate-making process. *See In re Hawaii Electric Light Co., Inc.,* 67 Haw. 425, 690 P.2d 274 (1984) (hereinafter *In re HELCO*). Hawaiian Electric Company, Inc. (HECO) withdrew these two issues at oral argument.

[4] We consider and decide HECO's due process contention based on the Hawaii Constitution. Article I, section 5 of the Hawaii Constitution (Supp. 1984) provides in part:
> No person shall be deprived of life, liberty or property without due process of law, . . . .

Quasi-public and private utility corporations have certain due process rights. *See* 18 Am. Jur. 2d *Corporations,* § 21 (1965); 16A Am. Jur. 2d *Constitutional Law* § 825 (1979). *Cf. Southwestern Bell Telephone v. Arkansas Pub. Serv. Comm.,* 267 Ark. 550, 593 S.W.2d 434 (1980).

B.

HECO then contends that the PUC acted improperly by failing to challenge the depreciation adjustment before or during the hearing. But this inaction, by itself, does not violate procedural due process. The PUC does not need to ask specific questions about a proposed rate change; the burden is on the utility to present to the PUC all applicable matter to support its claim. HECO alone has the burden of proof. HRS § 91-10(5) (Supp. 1984).

C.

HECO's next point has merit, however, as the situation changes when the PUC reconsiders a previously accepted concept. In HECO's last rate case, Docket No. 3705, submitted August 16, 1979 and decided by Decision and Order No. 6275 on July 9, 1980, HECO had requested the same type of depreciation adjustment. Without discussion, the PUC adopted the figure and used it in its calculations. The record does not show to what extent the PUC actually analyzed and agreed with the concept or even that the PUC was aware of what it did. The PUC claims that it should only be bound where it explicitly accepts a rate-making item. We disagree. Whether the PUC adequately reviewed the adjustment is not at issue here: what does matter is that by the PUC's implicit adoption HECO was led to believe that the PUC approved of the adjustment.[5]

The utility's due process right includes a meaningful opportunity to be heard. *See In re HELCO, supra; Utility Regulatory Commission v. Kentucky Water Service Co.,* 642 S.W.2d 591 (Ky. App. 1982). Such an opportunity does not exist where one party lulls the other into not acting. The PUC needed to put HECO on notice that the adjustment was now being challenged.[6]

---

[5] The PUC's failure to inform HECO that it now questioned the adjustment also violated HECO's HRS § 91-9(c) (1976) right to present evidence and argument on all issues. Without notice that HECO's depreciation adjustment was an issue, HECO was unable to fully present evidence, as was shown by the over 500 pages of data on the depreciation adjustment submitted as offer of proof with its motion for reconsideration or rehearing.

[6] HECO also claims that the PUC needed to put HECO on notice of its "new evidentiary standards" for depreciation adjustments. These standards were first

The PUC's proper course of action was either to query HECO and all other parties about the matter before it made its decision, or to grant HECO's motion for a rehearing to present evidence.

This due process concept also has a practical component. HECO must be prepared to defend its new calculations and methodology, of course, without specific inquiry by the PUC. Yet we see no reason to require HECO to "reinvent the wheel" at each rate hearing, especially in view of the extensive paperwork involved in the rate-making process. HECO has prepared over 500 pages of data just on this sub-issue alone. If HECO could not rely on what had been approved before, it would no doubt submit data on every issue, and the resultant paperwork would be staggering, seriously hampering the PUC's ability to analyze the data and submit its order in a reasonable time.[7]

We distinguish *In re HELCO, supra,* as that case involved a new rate-making item, not one which had prior approval. Also, in that case, the supreme court noted not only that HELCO had presented all the necessary evidence at the hearing, but also that HELCO had been permitted a reconsideration hearing involving oral argument and the filing of a memorandum on the issue. In the present case

---

enunciated by the PUC in Docket No. 4393, *Hawaii Electric Light Co., Inc. (HELCO)* (other issues in this docket on appeal decided in *In re HELCO, supra*). HECO was unable to comply with the PUC's new standards as the *HELCO* decision and order which first described them was not filed until four months after the HECO hearings.

We are at a loss as to the reason the PUC refused a rehearing on this issue, since in the same *HELCO* decision the PUC stated that it found this type of adjustment proper, and was merely unsatisfied with the type of evidence produced. However, we hold that the PUC did not need to inform HECO of its "new evidentiary standards" as there is no evidence in the record that at the time of the hearings the PUC had formulated them. The HECO hearings occurred on January 31, 1983 through February 8, 1983, the *HELCO* decision denying the adjustment was filed the following May, and the subsequent *HELCO* decision describing the new standards was issued in September. At any rate, this issue is moot as HECO now knows the standards and will have a rehearing on the issue.

[7] We note that HRS § 269-16(d) (Supp. 1984) provides that the PUC must render a decision within 9 months after the utility files its completed application, or submit a written report to the legislature on the reason for the delay. In this case the completed application was filed on July 6, 1982, but the decision did not come down until September 16, 1983, a period of approximately 14 months.

HECO's motion for reconsideration or rehearing on this issue was denied.

We reverse and remand and direct the PUC to schedule a rehearing on the depreciation adjustment issue.

Reversed and remanded.

*David L. Fairbanks* (*Thomas W. Williams, Jr.* with him on the briefs; *Goodsill Anderson Quinn & Stifel,* of counsel) for Appellant Hawaiian Electric Company, Inc.

*Ronald Shigekane,* Deputy Attorney General, for Consumer Advocate.

*Harry S.Y. Kim,* for Public Utilities Commission.